UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 26 CR 345 |
| v. | Hon. Laura K. McNally |
| JOSUE PACHECO TORRES, KLEIVER MONASTERIO BRICENO, also known as "Goofy," and JULIAN PACHANO | Magistrate Judge |

### GOVERNMENT'S POSITION PAPER IN ADVANCE OF
### JULY 9, 2026, STATUS HEARING

The UNITED STATES OF AMERICA, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, respectfully submits this position paper in advance of the July 9, 2026, hearing regarding the sealing order entered in this case. Dkt. 10. As detailed below, (i) the government acted in good faith, (ii) with the intent to comply with this Court's sealing order, and (iii) complied with the Court's order, which allowed for the government to disclose the complaint, affidavit, and arrest warrant "as necessary to facilitate the enforcement of criminal law." Dkt. 3. Given all of this—as well as the separation of powers, deliberative process, pre-decisional, and interagency privilege concerns raised by the Court's potential inquiry—the government respectfully submits that the Thursday, July 9, 2026, hearing should be terminated without further action by this Court.

### I.     Background

On June 29, 2026, this Court signed a complaint and arrest warrants charging defendants Josue Pacheco Torres, Kleiver Monasterio Briceno, and Julian Pachano with kidnapping resulting in death and kidnapping conspiracy, in violation of 18 U.S.C. §§ 1201(a) and (c). Dkt. 1. The affidavit submitted along with the complaint set forth facts establishing that defendants participated in the conspiracy in connection with their involvement in Tren de Aragua ("TdA"), a violent transnational gang that the Executive Branch designated as a foreign terrorist organization in February 2025. Dkt. 1.

That same day, the Court granted the government's motion to seal the case. The sealing order stated in relevant part:

> IT IS HEREBY ORDERED THAT the Complaint, Affidavit, Arrest Warrants, and Motion to Seal be sealed until the time of arrest of all defendants in this case or further order of the Court, whichever occurs earlier. ***This Order does not prohibit law enforcement personnel from disclosing the Complaint, Affidavit, and Arrest Warrants as necessary to facilitate the enforcement of criminal law***, including the execution of the warrant, or to any federal official to assist the official receiving the information in the performance of that official's duties.

Dkt. 3 (emphasis added).  That same day, law enforcement began an operational plan to apprehend the two defendants who were not in federal custody.

The next day, the U.S. Attorney for the Northern District of Illinois was invited to Washington, D.C. for a July 1, 2026, press event, which he learned he would be attending for the first time on June 30, 2026. The event focused on the enforcement of criminal law against TdA, and was led by the Acting Attorney General of the

United States and included the Director of the Federal Bureau of Investigation, leadership from the Joint Task Force Vulcan (JTFV),[1] the United States Attorneys for the Northern District of Texas and the Northern District of Illinois, among others. The purposes of the press announcement included:

1. Announce charges filed against eight TdA gang members across two judicial districts (Northern District of Texas and Northern District of Illinois), including the defendants charged in this case.

2. Deter future crimes by TdA, by publicly demonstrating that federal law enforcement would prioritize the prosecution and punishment of violent offenses committed by TdA members.

3. Generally deter crimes by other gang leaders, organizers, and members, by publicly stating that such individuals will face immediate and long-term criminal consequences for their criminal activity.

4. Encourage witness cooperation, by publicly identifying gang members and their activities, thereby encouraging individuals with knowledge to come forward.

5. Highlight and strengthen interagency coordination, which is particularly important for violent street gangs such as TdA that span multiple jurisdictions across the country.

---

[1] JTFV was created in 2019 to eradicate MS-13 (another notorious, violent street gang), and was expanded at the direction of the Attorney General to target TdA. JTFV is comprised of Assistant United States Attorneys from across the country, as well as the Executive Office for U.S. Attorneys, and the Department of Justice's National Security Division. The United States Attorney's Office for the Northern District of Illinois has partnered with JTFV to conduct this investigation and bring the charges in the complaint.

6. Reassure the public that law enforcement is actively addressing gang violence, including TdA violence, which helps to build trust and encourage community members to report crimes.

Early in the morning on July 1, 2026, the United States Attorney traveled to Washington, D.C. By the time he reached D.C., defendant Torres had recently been arrested, defendant Briceno was in immigration custody, and defendant Pachano was still at large.

The United States Attorney understood the defendants' arrests and charges would come up during the press conference. The United States Attorney likewise understood that such information was subject to a sealing order with which he was familiar, which included the carveout language bolded above. Accordingly, although the United States Attorney's preference was to unseal the complaint and associated material before the press announcement, the United States Attorney understood that the press announcement complied with the letter and spirit of the sealing order, because the press announcement was for the purpose of facilitating "the enforcement of criminal law," based on the event's purposes, as described above.

Before the press announcement, the United States Attorney requested that the Assistant United States Attorneys assigned to this matter take steps to unseal the complaint, affidavit, and arrest warrants, either as to all defendants or in redacted form. Based on his interactions with his colleagues, the United States Attorney understood that the prosecution team was in communication with chambers, including one Assistant United States Attorney physically having gone to

4

chambers, regarding unsealing and believed that the matter would be promptly unsealed.[2]

Shortly after this point, the United States Attorney was no longer able to communicate with his team because of the impending press announcement and related preparations. When the United States Attorney entered the press event, he believed in good faith that the case was being unsealed or had been unsealed in light of the government's communications with and physical presence in chambers, which the government had described as time sensitive, as well as his past experience with the unsealing of criminal complaints at the government's request. Indeed, that the United States Attorney would be speaking last at the press event gave him additional comfort that the unsealing would occur before he spoke publicly. During the press event, the United States Attorney did not know that the sealing order had not been lifted. The United States Attorney recognizes the last-minute nature of the unsealing request and certainly appreciates that the Court had other matters on its schedule that day.

During the press announcement, the United States Attorney stated that a criminal complaint and arrest warrants had been filed and referenced the names of defendants Torres and Briceno (both of whom were in federal custody, with Briceno in immigration custody), but not defendant Pachano, who was still at large. The

---

[2] All internal communications are covered by multiple privileges, including the deliberative process and pre-decisional privilege. *In re United States*, 398 F.3d 615, 618 (7th Cir. 2005) ("How the United States reaches its litigating positions, who said what to whom within the prosecutor's office, and so on, are for the Attorney General and the President to evaluate. The Judicial Branch is limited to assessing counsel's public deeds."); *see id.* ("[I]ntra-office conversations and memoranda. . . are covered by multiple privileges.").

United States Attorney did not reference Pachano because he did not want to endanger or jeopardize law enforcement with respect to their apprehension of Pachano.

In addition, the United States Attorney referenced certain facts related to this case that were not sourced to the complaint affidavit and in some instances were not contained in the complaint affidavit. Those comments included general statements about the importance of investigating crimes by TdA and enforcing the criminal laws against TdA. For example, the United States Attorney stated in relevant part:

> [T]he scourge of violence that has gripped Chicago for too long is beginning to see relief. The complaint against these three TdA members should leave no doubt that the Chicago U.S. Attorney's Office is going to vigorously pursue transnational criminal organizations and hold their members and associates accountable for their violent criminal acts. We will continue to prioritize the investigation and prosecution of TdA, which very deservedly has been designated by President Trump and his Administration as a terrorist organization.

> Our shared goal is crystal clear: to disrupt and dismantle TdA and not allow it to gain a foothold in the United States or Chicagoland. Plus, we want to bring to justice those who break the law, especially by using violence.

Subsequently, in the early afternoon, after conclusion of the press announcement and after having learned the complaint had not been unsealed, the United States Attorney once again requested that the Assistant United States Attorneys assigned to this case seek to unseal the criminal complaint and related documents. His renewed request to unseal was so that Department of Justice and other law enforcement leadership could share a copy of the complaint with interested parties covering that day's law enforcement operations, as the complaint included

6

substantial details that had not been discussed at the press event. This was done out of an abundance of caution, even though the U.S. Attorney believed the sealing order's carveout applied.

Assistant United States Attorneys then corresponded with this Court's staff again about unsealing the case materials and were asked by the Court's staff if the government was filing a motion to unseal. Because this was a sealed case, the government indicated a preference for filing those materials through a submission to the Court's proposed order inbox, which Court staff indicated was fine. Those materials were submitted to the Court's inbox at around 1:25 p.m.

This Court did not grant the motion to unseal and instead entered a minute order at approximately 7:30 p.m.:

> On 7/1/26 at approximately 8:00 a.m., the Government called Chambers to state that it would be seeking to unseal the Complaint with redactions. The Government represented that it needed to obtain a ruling within the next 15 minutes. The Government then hand-delivered a set of proposed redactions to Chambers. At that time, no formal motion was tendered to the Court. Given imminent hearings in other criminal matters, the Court was not able to take up the oral request at that time, and the seal remained in place. At approximately 1:25 p.m., the Government sent a written motion to unseal to the Court's proposed order inbox. The Court informed the Government at 4:57 p.m. that it would take up the motion when it was formally filed on the docket. As of 7:00 p.m. on 7/1/26, no formal filing has appeared on the docket. The Government is ordered to formally file the motion that was submitted informally to the Court's proposed order inbox. The Government's motion is denied. In seeking to seal the entire Complaint on 6/29/26, the Government represented to this Court that the public filing of the Complaint before the arrest warrants could be executed could alert the defendants and result in their flight and the destruction of evidence. 2 The Court relied on the sincerity and truthfulness of that representation, and it granted the motion. 3 As of the date of the motion to unseal, less than 48 hours after the arrest warrants were issued, the Government represents that the defendants have not all been arrested.

7

> One defendant remains at large. The Government has offered no reason to believe that its prior concerns regarding flight or the destruction of evidence have been addressed, ***and the modest redactions proposed in the motion are, in the Court's view, insufficient to achieve the protections sought by the Government in their initial motion to entirely seal the Complaint.*** The Court will entertain a renewed motion to unseal in the normal course.

Dkt. 7 (emphasis added).

The next morning, the government confirmed that federal law enforcement had taken Pachano into custody and thereafter issued a press release, which included a link to the criminal complaint and affidavit. Because all three Defendants were in custody at that point, the U.S. Attorney believed the case was automatically unsealed, based on the portion of the sealing order stating: "the Complaint, Affidavit, Arrest Warrants, and Motion to Seal ***be sealed until the time of arrest of all defendants in this case*** or further order of the Court, whichever occurs earlier." Dkt. 3 (emphasis added).

Following defendant Torres's initial appearance, the Court issued a minute order expressing concern with the government's compliance with the sealing order based on the press announcement on July 1 and the press release on July 2. In its minute order, the Court directed that the United States Attorney appear at a hearing to take place on July 9, 2026, at 10:00 a.m.

## II. Discussion

The government's actions at both the press announcement on July 1 and in issuing the press release on July 2 were taken in good faith and in accordance with the letter and spirit of the Court's sealing order.

The U.S. Attorney believed in good faith that he was complying with the sealing order's carveout language. These actions were consistent with the purpose of the sealing order, which was to limit public access to the complaint rather than to constrain law enforcement. *See Searcy v. United States*, No. 12-C-0259, 2012 WL 6737794, at *2 (E.D. Wis. Dec. 28, 2012) ("[S]ealing pertains to the public record of the search warrant, not those executing it.").

These actions were also consistent with the substantial discretion that the government has through its Article II executive powers to make disclosures that facilitate the enforcement of criminal law; disclosure decisions such as these are inextricably intertwined with charging decisions, where the government's discretion is at its zenith. *United States v. Fokker Services B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016 ("'[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.'" *Id.* (quoting *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967)).[3]

---

[3] *See also e.g., United States v. Batchelder*, 442 U.S. 114, 124 (1979); *United States v. Nixon*, 418 U.S. 683, 693 (1974).

Like every other officer of the Court, the United States Attorney and Assistant United States Attorneys must comply with "express" court orders, *In re Res. Tech. Corp.* 624 F.3d 376, 387 (7th Cir. 2010), and may not take any actions that are "clearly, specifically, and unequivocally" prohibited by such orders. *United States v. Joyce*, 498 F.2d 592, 596 (7th Cir. 1974) (both analyzing contempt language).

Here, the carveout explicitly allows disclosure that is "necessary to facilitate the enforcement of criminal law." Dkt. 3. "Necessary" means something "[t]hat is needed for some purpose or reason," while "facilitate" can mean "[t]o make the occurrence of (something) easier; to render less difficult." *Black's Law Dictionary*, 12th ed. 2024. In the instant matter, the U.S. Attorney reasonably believed that disclosure of the arrests and charges of TdA members helped facilitate the government's enforcement of criminal law both in and outside of this district, for the reasons set forth above. Indeed, officials at the highest levels of the Executive Branch, including the Acting Attorney General of the United States, the Director of the Federal Bureau of Investigation, and other senior members of federal law enforcement, viewed the disclosure of the complaint as important to the enforcement of criminal law. Just as a court might sentence a defendant with general deterrence in mind, believing such sentences are necessary to facilitate the enforcement of law, the government reasonably believed as much here, in addition to the various other criminal law enforcement prerogatives discussed above. The government respectfully submits that it did not violate any clear and unambiguous terms of the sealing order, which the government proposed and which this Court entered for the purpose of

10

facilitating law enforcement's efforts. Given all of this, the government respectfully submits that it complied with the letter and spirit of the Court's sealing order.

The sealing order's terms also should be construed with its drafters and purpose in mind. *Cf. Jud. Watch, Inc. v. U.S. Dep't of Just.,* 813 F.3d 380, 383 (D.C. Cir. 2016) (noting that the intended scope of a sealing order is a relevant consideration). This Court correctly ruled that a compelling need in entering the sealing order was to secure the attendance of all defendants, avoid destruction of evidence, and keep the community safe. However, the decisions about when to unseal and as to whom are inexplicably intertwined with charging decisions themselves, and those interests can be outweighed by the need to promote the enforcement of criminal laws, especially when that determination is made at the highest levels of the Executive Branch.

In making the disclosure, the government believed in good faith that it was properly balancing the interest in public access to the complaint with law enforcement's interests in the case. *Cf. United States v. Mullins*, No. 22-CR-120 (JGK), 2023 WL 3159418, at *3 (S.D.N.Y. Apr. 26, 2023) (noting the presumption of public access to judicial documents). As the D.C. Circuit has noted, "Decisions to initiate charges, or to dismiss charges once brought, lie at the core of the Executive's duty to see to the faithful execution of the laws," and "judicial authority is at its most limited when reviewing the Executive's exercise of discretion over charging decisions." *Fokker*, 818 F.3d at 741 (cleaned up). In light of the purpose of the sealing order and the separation of powers doctrine, the government should be afforded

11

substantial deference as to what constitutes a disclosure to facilitate the enforcement of criminal law, particularly when such decisions are made by Executive branch leadership.

Indeed, the government's efforts on July 1 both in the morning (pre-press announcement) and afternoon (post-press announcement) to take the additional and precautionary step to request unsealing—even though it believed the carveout applied—demonstrates its good-faith compliance. As discussed above, based on communications with the Court's staff, the presence of an Assistant United States Attorney in chambers to unseal the complaint, the fact that the United States Attorney would be speaking last, and past experience with unsealing complaints, the United States Attorney reasonably believed the complaint would be unsealed or partially unsealed when he spoke at the press event. In addition, the United States Attorney also understood that the carveout provision in the sealing order authorized the disclosures. Furthermore, the United States Attorney made good faith efforts to effectuate the spirit of the order, by not naming the one defendant who had not yet been apprehended (Pachano) during the press event. Not naming that defendant further ensured that the protections from the sealing order, namely, protecting law enforcement, avoiding flight, and the prevention of evidence destruction, would be preserved as to that particular defendant.

Regarding the July 2, 2026, press release, the government understands the Court's concern to be that the government issued the press release while Briceno was still in immigration custody and had not been arrested pursuant to the complaint.

12

However, in addition to application of the carveout, at the time the government issued the press release on July 2, 2026, it reasonably believed that all defendants were considered in custody, including Briceno, and that the case had been automatically unsealed by operation of the following language in the sealing order: "IT IS HEREBY ORDERED THAT the Complaint, Affidavit, Arrest Warrants, and Motion to Seal be sealed *until the time of arrest of all defendants* in this case or further order of the Court, whichever occurs earlier." Dkt. 3 (emphasis added).

The U.S. Attorney respectfully submits that he acted with a good faith belief that Briceno was considered under arrest for purposes of the sealing order, given that he was in immigration custody and not free to leave.

### III.    Conclusion

For the reasons stated herein, the government respectfully submits that there is no need for a further hearing.  Indeed, the government is providing this written submission in advance of the ordered hearing to assure the Court of the good faith nature with which it acted as well as the reasons for its actions. The government complied with the letter and spirit of the sealing order and acted in good faith. Furthermore, there has been no harm to any defendant or law enforcement officer, as defendants are all now in custody. Accordingly, the government respectfully asks that the Court strike the July 9, 2026, hearing date. *See United States v. Koubriti*, 305 F. Supp. 2d 723, 752-54 (E.D. Mich. 2003) (accepting Attorney General's representation "as an officer of the court" that a violation of a gag order was not willful and canceling hearing due to constitutional concerns with calling high-level executive

13

branch officials to testify); accord *United States v. Concord Mgmt. & Consulting LLC,*

No. 18-CR-32-2 (DLF), 2019 WL 7758635, at *9 (D.D.C. July 1, 2019).

Respectfully submitted,

*/s/ Andrew S. Boutros*
ANDREW S. BOUTROS
United States Attorney
219 South Dearborn Street, 5th Floor
United States Attorney's Office
Chicago, Illinois 60604
(312) 353-5300

Dated: July 8, 2026

14